■ In the Matter of SHELLY L. BJORK, Appellant-Respondent, v ERIK T. BJORK, Respondent-Appellant. [871 NYS2d 743]—

Spain, J. Cross appeals from an order of the Family Court of St. Lawrence County (Potter, J.), entered February 16, 2007, which partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.

The parties, parents of a son born in 1996, divorced in 1999 and custody was granted to petitioner (hereinafter the mother) on consent of respondent (hereinafter the father). In 2001, after a trial, Supreme Court (Rogers, J.) modified custody by granting the father sole custody of the then four-year-old child with parenting time to the mother, a modification based on the mother's poor parenting, financial mismanagement, gambling excesses and other areas of instability. Since then, the father has had custody and the mother has had parenting time on alternating weekends, Wednesdays from 3:00 P.M. to 7:00 P.M., and shared or alternating holidays and school vacations. The mother's prior petition to modify custody based upon the father's intent to relocate was dismissed as premature (*Matter of Bjork v Bjork*, 23 AD3d 784 [2005], *lv denied* 6 NY3d 707 [2006]), as was a similar subsequent petition.

The mother filed the instant modification petition in 2006 seeking sole custody based upon the father's reassignment to a distant work site which required that he regularly stay out of town leaving the son in the care of his fiancée. After a lengthy trial spanning over six months, in which the parties and others testified and Family Court conducted two in camera hearings with the then 10-year-old child, the court found that there was a sufficient change in circumstances to warrant a modification of the 2001 custody order to the extent of awarding the mother overnight parenting time for periods when the father is working overnight out of town, and increased visitation (including overnight on Wednesdays and two consecutive weeks in the summer). A contingent schedule is included in the event the father's work location is changed, eliminating the need for staying overnight out of town. Joint custody was rejected due to the parties' inability to cooperate, custody remained with the father, and the alternating or shared holiday and school vacation schedule remained intact. The mother now appeals.*

Upon review, we find that Family Court's modification—explained in detail in a well-reasoned decision that accurately characterizes the relevant changed circumstances and the deleterious impact on the child of the parties' warring behavior—is fully supported by a sound and substantial basis and the court's credibility determinations are entitled to great weight; as such, its order will not be disturbed (*see Matter of Goldsmith v Goldsmith*, 50 AD3d 1190, 1191-1192 [2008]; *Matter of De Hamel v Porto*, 22 AD3d 893, 894 [2005]). The testimony

* While the father filed a notice of cross appeal, he raises no challenges to the order in his brief and, thus, he has abandoned his cross appeal (*see Matter of Streid v Streid*, 46 AD3d 1155, 1156 n [2007]).

established that the child has resided with his father and his father's fiancée in a nurturing environment since 2001, and he excels in school and is well-cared for by his father, who is actively involved in his schooling, health care, sports and other activities. The father, a correction officer, accepted a promotion to sergeant, requiring a commute of 280 miles from his home in the City of Ogdensburg, St. Lawrence County to a Sullivan County facility, without informing the mother. By choice and with permission, he works double shifts for four consecutive days, requiring overnight stays for those days, and then returns home for an eight-day stretch. In his absence, his fiancée, who is not employed outside the home, cares for the child unless it is the mother's parenting time; by all accounts the child has enjoyed a close relationship with the fiancée since 2001 and is well cared for in his father's absence. The mother, as the court noted, "has greatly improved her situation." She has a full-time job, is financially more stable and responsible, owns her home and has a younger daughter with whom the child is close. She is involved in the child's life, regularly exercises visitation, is described as warm and loving, and often seeks more time with him. She also has an extended family with whom the child regularly spends time.

The father refuses, unjustifiably we agree, to allow the mother any additional parenting time while he is working out of town, even on the weekends that he is away. Both parents, but particularly the father, have repeatedly refused to be flexible under the current custody order, rejecting requests by the other for extra or varying times even when it means that the child will miss an important family vacation, sporting event, or other opportunity. Their power struggle has been harmful to the child. We agree with Family Court's determination that the parties' acrimony and the father's extended overnight out-of-town work schedule constitute a significant change of circumstances that impacts upon and requires reconsideration of the child's best interests (*see Posporelis v Posporelis*, 41 AD3d 986, 988-989 [2007]; *see also Matter of Gorham v Gorham*, 56 AD3d 985 [2008]).

With regard to what custodial modification, if any, would further the child's best interests, always the paramount consideration in any custody determination, Family Court meticulously considered all of the relevant factors (*see Goldsmith v Goldsmith*, 50 AD3d at 1191; *Matter of DeHamel v Porto*, 22 AD3d at 894). The record fully supports the court's determination that while both of the parties enjoy a close, loving relationship with the child and are able to care for him, they have acted inap-

propriately and unreasonably toward one another. They have failed to cooperate in their dealings with regard to him and have placed him in the middle of their own tug-of-war, crushing him with the burden of pleasing both parents and causing him heartache and stress. Thus, joint custody is not feasible (*see Matter of Grant v Grant*, 47 AD3d 1027, 1028 [2008]).

The child has lived many years with the father and fiancée, in an otherwise stable and nurturing environment. Neither the father's changed work schedule nor the mother's improved parenting and increased financial and other stability, nor her persistent exercise of parenting time and involvement in the child's life, warrants changing sole custody to her. Rather, Family Court, after hearing all of the testimony and speaking with the child in camera, quite rationally concluded that the child's best interests would be served by increasing his time with his mother, particularly when the father is working out of town for extended overnight periods. Indeed, allowing the child to stay with his mother while he is away should, in all reasonableness, have been agreed to by the father without the necessity of a protracted trial. "[T]he best interests of children generally lie with a meaningful relationship with both parents" (*Tait v Tait*, 44 AD3d 1142, 1143 [2007]). While giving regard to the fiancée's care for and attachment to him, this child clearly loves and needs his mother as well as his father. The child's emotional and physical well-being are at the heart of the court's sound and fair resolution of the parties' dispute, a determination rightly focused not on vindicating parental "rights" so much as honoring the child's best interests and respecting his right and need to spend more time with his noncustodial parent (*see Weiss v Weiss*, 52 NY2d 170, 174 [1981]).

We have examined the mother's remaining claims and find that they lack merit.

Peters, J.P., Lahtinen, Kane and Kavanagh, JJ., concur. Ordered that the order is affirmed, without costs.