*569 The mother and the father are the still-married parents of a now six-year-old son (hereinafter the child). Until December 2009 the parties and the child lived in Wappingers Falls with the mother’s two sons from prior relationships, then respectively aged 9 and 11. The mother and the father each worked full-time while living together. In November 2009 the father lost his longstanding employment with a pharmaceutical company.
On April 5, 2010, the mother and the father consented to an order of custody and visitation which provided for joint legal and physical custody of the child. In the summer of 2010, after searching New York and the surrounding area for employment to no avail, the father found a position near Providence, Rhode Island, a three-hour drive from Wappingers Falls, and relocated to Rhode Island. In August 2010 the parties modified their custody agreement to provide for a split schedule whereby the child would spend Monday through Wednesday morning with the mother, Wednesday evening through Friday with the father, and alternate weekends with the parents, who shared the drive to and from Rhode Island by meeting halfway. A subsequent order dated January 7, 2011, inter alia, continued joint custody while modifying certain of the scheduling provisions (hereinafter the prior order).
On June 14, 2011, the father commenced this proceeding to modify the prior order so as to obtain sole legal and physical custody of the child. The child, who had been attending preschool at the mother’s place of employment, was scheduled to begin full-time kindergarten that September.
The mother and the father each testified at the hearing on the father’s petition, and the court held separate in camera interviews with the child and his two half-brothers. The mother and the father both testified, inter alia, that they were the child’s primary caregivers until they separated, and asserted that they each would respect the other parent and foster that parent’s relationship with the child. However, the testimony *570 also established that the father would only communicate with the mother by e-mail and text messages, and did not inform the mother that the child had a medical condition which required surgery until an hour before the child underwent surgery for the condition. The father also failed to inform the mother that he was taking steps to enroll the child in a private school near his home in Rhode Island, which included the child being interviewed three separate times, without the mother’s knowledge.
The paramount concern in any custody dispute is the best interests of the child (see Eschbach v Eschbach, 56 NY2d 167, 171 [1982]; Matter of Ramirez v Velez, 78 AD3d 1062 [2010]), which requires review of “the totality of the circumstances” (Matter of Parliman v Labriola, 87 AD3d 1144, 1144 [2011]; see Matter of Nava v Kinsler, 85 AD3d 1186, 1186-1187 [2011]; Trinagel v Boyar, 70 AD3d 816 [2010]). The court must consider various factors, ranging from the quality of each parent’s home environment and ability to provide for the child financially, emotionally, and intellectually, to the determination of which parent is more likely to foster future contact with the noncustodial parent (see Eschbach v Eschbach, 56 NY2d at 171-172; Matter of Yearwood v Yearwood, 90 AD3d 771, 773-774 [2011]; Matter of Ramirez v Velez, 78 AD3d 1062 [2010]). In addition, the disruption of relationships between siblings should be avoided in the absence of an “ ‘overwhelming need to do so’ ” (Matter of Crowder v Austin, 90 AD3d 753, 754 [2011], quoting Matter of Chery v Richardson, 88 AD3d 788, 789 [2011]; see Eschbach v Eschbach, 56 NY2d at 173; Freihofner v Freihofner, 33 AD3d 585, 586 [2006]).
Since custody determinations largely depend on the hearing court’s assessment of the parties’ credibility, character, temperament, and sincerity, the hearing court’s determination should not be disturbed unless it lacks a sound and substantial basis in the record or is contrary to the evidence (see Matter of Picado v Doan, 90 AD3d 932, 933 [2011]; Matter of Nava v Kinsler, 85 AD3d at 1186-1187; Matter of Chabotte v Faella, 77 AD3d 749, 750 [2010]; Matter of Nunn v Bagley, 63 AD3d 1068, 1069 [2009]).
Here, the Family Court’s determination denying the father’s petition and awarding sole legal and physical custody to the mother as being in the best interests of the child is supported by a sound and substantial basis in the record. The evidence demonstrated that, although both the father and the mother have the ability to provide the child with more than adequate material support, the father excluded the mother from partici *571 pating in significant issues relating to the child’s health and welfare. In addition, the child and his half-siblings have a close and healthy relationship.
Accordingly, the Family Court properly denied the father’s petition and awarded the mother sole legal and physical custody of the child (see Eschbach v Eschbach, 56 NY2d at 173; Matter of Solovay v Solovay, 94 AD3d 898, 898-899 [2012]; Matter of Picado v Doan, 90 AD3d 932 [2011]; White v Mazzella-White, 84 AD3d 1068 [2011]). Dillon, J.P., Balkin, Belen and Chambers, JJ., concur.